## Case No. 2,909.

### CLUM v. BREWER et al.

[2 Curt. 506.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1855.

PATENTS —"ELECTRIC TELEGRAPH" — TEMPORARY INJUNCTION—PRACTICE — ENJOINING EQUITABLE OWNER — COMMISSIONER'S DECISION ON EXTENSION—CONCLUSIVENESS — SALE OF INVENTION—LICENSE BY CO-OWNER.

1. Since the decision of Poor v. Carleton [Case No. 11,272], the practice of this court has been settled, that the denial of the plaintiff's title in an answer does not prevent the court from awarding a special temporary injunction.

2. If a patentee has established his title under original letters-patent, he is entitled to a temporary injunction under an extension of those letters-patent, without a further trial of his right.

3. The act of the commissioner in extending letters-patent is conclusive evidence of all the facts, which he is required to find in order to grant such extension, in the absence of fraud and any excess of jurisdiction.

[Cited in Crompton v. Belknap Mills, Case No. 3,406; Jordan v. Dobson, Id. 7,519.]

4. Where the right to a temporary injunction does not depend upon any controverted and doubtful facts, but upon the interpretation to be put upon a written instrument, it is the duty of the court to interpret it and grant or refuse the injunction accordingly.

[Cited in Earth Closet Co. v. Fenner, Case No. 4,249; Hodge v. Hudson River R. Co., Id. 6,560.]

5. The inchoate right of an inventor to the exclusive privileges under an extension of letters patent is the subject of a sale.

[Cited in Newell v. West, Case No. 10,150; Emmons v. Sladdin, Id. 4,470; Hendrie v. Sayles, 98 U. S. 552.]

6. Semble, a sale of "an invention" does not necessarily carry this inchoate right; but such a sale may be so explained in the instrument, as to have that effect.

[Distinguished in Hodge v. Hudson River R. Co., Case No. 6,559. Cited in Jenkins v. Nicolson Pavement Co., Id. 7,273; Mowry v. Grand St. & N. R. Co., Id. 9,893; Gear v. Grosvenor, Id. 5,291; Waterman v. Wallace, Id. 17,261; Emmons v. Sladdin, Id. 4,470; Hendrie v. Sayles, 98 U. S. 552. Applied in Johnson v. Wilcox & Gibbs S. M. Co., 27 Fed. 690.]

7. One tenant in common of letters-patent has the same rights as another, to make, use, and sell the thing patented; and a license under one tenant in common cannot be enjoined on a bill by another tenant in common.

[Approved in Dunham v. Indianapolis & St. L. R. Co., Case No. 4,151.]

8. A court of equity will not enjoin the equitable owner of a patent, on the application of the legal owner.

[Cited in Whiting v. Graves, Case No. 17,577; Wright v. Randel, 8 Fed. 599.]

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

9. Construction of the contracts and conveyances between S. F. B. Morse and F. O. J. Smith, respecting the electric telegraph invented by the former.

This bill was filed by the complainant [William B. Clum], who claimed to be the grantee under Professor Morse, of a certain sectional interest in the state of Massachusetts, under the extended letters-patent, originally granted to Morse, on the twentieth day of June, 1840, and renewed and extended by the commissioner of patents for seven years from the twentieth day of June, 1854 [against Charles H. Brewer and others]. The defendant Smith, by his answer claimed under certain instruments executed by Morse, set out therein; and the other defendants justified under licenses from Smith. As the decision of this motion for a temporary injunction, turned mainly on the construction of these contracts, they are here inserted.

## "Deed.

"Whereas I, Samuel F. B. Morse, of the city and state of New York, am the sole and original inventor of a system of electro-magnetic telegraphs for the conveyance of intelligence by words and signs, or by either, and to secure my legal rights and property to said invention, I have filed a caveat and evidence of my said invention in the office of the commissioner of patents, in the city of Washington, to the end of obtaining letters-patent for said invention hereafter according to law. And be it therefore known to all to whom these patents shall come, that I, the said Morse, for a valuable consideration to me paid by Francis O. J. Smith, of Portland, Maine, the receipt whereof I do hereby acknowledge, have bargained, sold, and do hereby bargain, sell, and convey unto the said Smith, his heirs and assigns, one undivided fourth part of my said invention, and of all my rights and property therein secured by my said caveat or otherwise, that I have or may have from any letters-patent for the same, granted by the government of the United States, and within the limits thereof. Also five undivided sixteenth parts of all the right, title, and property which I have or may secure or otherwise derive from and in said invention, without the limits of the United States by letters-patent or otherwise, except in the republic of Texas, hereby making and constituting said Smith part and joint owner with myself, of said invention, and all property consisting therein, both within and without the limits of the United States, in the proportions already specified. And I further agree, that as soon as may be, after letters-patent for said invention shall be obtained from the government of the United States, or any other governments, I will execute and deliver good and sufficient deeds of transfer of said parts, and of all rights and property incident thereto, and to account from the date hereof to the said Smith in the proportions before named, for all the pro-

ceeds of sales of rights to use said invention in any place or country, that may accrue to me at any time, including also a right to share in like proportions in all improvements that may be made thereon by me.

"In testimony whereof, I have hereunto set my hand and seal, on this —— day of March, A. D. eighteen hundred and thirty-eight. Samuel F. B. Morse, (L. S.)

"Witness, Leonard D. Gale."

## "Articles of Agreement.

"These articles of agreement made and concluded on this —— day of March, A. D. eighteen hundred and thirty-eight, by and between Samuel F. B. Morse, of the city and state of New York, of the first part, and Francis O. J. Smith, of Portland, in the state of Maine, of the second part, and Alfred Vail, of Speedwell, in the township and county of Morris, and state of New Jersey, of the third part, and Leonard D. Gale, of the city of New York, of the fourth part, witnesseth as follows, that is to say:—

"That in consideration of said parties being the joint owners, in unequal parts, of a certain invention of an electro-magnetic telegraph, for the conveyance of intelligence by sounds and signs, or by either, to wit: The said Morse as original inventor of said telegraph, and the other several parties named, as assignees of the said Morse, they have agreed each for himself, his heirs, and assigns, except so far as either heirs or assignees are incapable of rendering the personal services by these presents contemplated, and each separately and not for the other, as follows, and each with the other, namely:—

"1st. The said Smith hath agreed, and hereby agrees, to proceed as soon as may be, at and upon his individual expense and advance, to take all legal and necessary measures for procuring and securing by letters-patent, the ownership and control of said invention to the said Morse, and his associate proprietors therein, including the said Smith, from the governments of Great Britain and France, and their respective dependencies, and from such other foreign governments and potentates, excepting the republic of Texas, as shall be practicable for him to do by ordinary vigilance, and, in his opinion, of profit and advantage to said proprietors. And to this end, the said Smith shall, in the month of April next, as early in said month as convenient, sail for Europe, taking with him sufficient and necessary means to defray the expenses of travelling, and of government fees, and of other incidental services and charges, for the accomplishment of the purposes aforesaid—including the personal expenses of said Morse, in the manner hereinafter described.

"2d. That the said Smith shall use his best and utmost endeavors to negotiate and sell the right to use said invention, to any of said governments, or potentates, or to any person or associations of persons, for the benefit and

common account of the proprietors thereof. And all proceeds of such sales, first deducting the aforesaid expenditures which the said Smith shall incur in the premises, or by way of advances, shall be divided and apportioned among the proprietors of said invention, in the ratio of their respective interests.

"3d. That in negotiating any sales as aforesaid, the said Smith, while out of the United States, shall be at liberty and authorized to exercise his best judgment and discretion, as to the price, terms, and manner of payment from purchasers, and in all things effect, and do what he shall judge to be for the best interests and advantage of the proprietors, but in no case to incur any expense or debt chargeable to them, without their previous authority, and assent, or otherwise than is in this instrument specifically provided.

"4th. That said Smith shall account to the proprietors severally for their respective shares of the proceeds of all sales that shall be effected by him, by virtue of these presents at any, and at all times on demand, to the extent that the same shall have been realized in money, or other property by him.

"5th. That unless the said Smith shall succeed in effecting sales of said invention, in the manner before described, from the proceeds of which to refund his expenditures in the premises; the other co-proprietors are not to be holden or liable to refund or contribute to the payment thereof, be the same more or less; but the whole shall in that event be borne by and remain the loss of the said Smith, to the extent that such proceeds shall be deficient.

"6th. That the said Smith shall and will at all times hereafter, during the continuance of said invention as a patent right, without other charge or compensation than the interest therein conveyed to him as aforesaid by said Morse, render his individual services as a counsellor and attorney at law, to the said Morse, and the persons associated with him in the ownership of said invention at the date hereof, as well in the managing, conducting, and transferring their individual interest in said invention, as in sustaining the validity, and repelling infringements of their titles thereto, and in the United States after his return from Europe, as elsewhere, while absent from the United States as before provided; but in all cases, wherein by rendering such services, the said Smith shall incur travelling, or other incidental expenses, he shall be repaid the same by the party or persons for whose benefit or at whose demand such services may or shall be rendered as aforesaid—and when such services shall be for the common benefit of the proprietors of said invention, then such incidental expenses shall be paid by them in the ratio of their respective interests.

"7th. The said Morse hath agreed, and hereby agrees, to accompany said Smith to Europe, and such governments without the limits of the United States, besides England and France, as he and the said Smith shall hereafter determine to visit together,—sailing with said Smith for that purpose in April next, as herein before provided, to aid and assist in exhibiting said invention, and sustaining the validity thereof as may be in his power, and devoting himself to the business of said proprietors in such foreign countries as he may visit with said Smith, for a term not exceeding three months after their arrival in Europe. But all of said Morse's personal expenses of travelling, and incidental expenses during said term, and so long as he shall be engaged with said Smith in such foreign countries in the business of said proprietors, and in returning to the United States, shall be advanced, and borne and paid by the said Smith, exclusively, at his individual risk and loss, until the same shall be refunded to and realized by him, deducting the same from the proceeds of sales that shall be made by said Smith, in the manner provided in the preceding articles of this instrument.

"8th. The said Morse is to furnish the said Smith the material and mechanism, of one complete set of telegraphs for use and exhibition in foreign countries, and provide another set for use and exhibition in the United States; and no charge or expense of the same shall be borne or paid by the said Smith; and the said Smith shall, also, be furnished with all necessary models and drawings that may be required abroad or without the limits of the United States, at the common charge and expense of said proprietors in the ratio of their respective interests abroad, to be refunded as before provided.

"9th. The said Vail hath agreed, and hereby agrees, to devote his personal services and skill in constructing and bringing to perfection, as also in improving the mechanical parts of said invention, until the same shall be made the property of the government of the United States, or otherwise be disposed of by said proprietors; and without charge for such personal services to the other proprietors, and for their common benefit; said services to be in accordance with the general direction and supervision of the said Morse.

"10th. The said Gale hath agreed, and hereby agrees, at all times hereafter, while said proprietors shall have an interest in said invention, to devote his professional services and skill, without charge or expense to said proprietors, in effecting improvements in the philosophical and physical qualities or properties of said invention, and in extending and perfecting the same, by such chemical and other scientific experiments as may be suggested as serviceable and proper to be made, by either of said proprietors, with a view to enhance the value of said invention, and of each proprietor's interest therein.

"11th. All expenses and charges incident

to the perfection of said Morse's application for letters-patent from the government of the United States, and of obtaining said letters-patent, shall be borne and paid by the said Morse and Vail, exclusively—as are also all expenses incident to and growing out of the improvement and perfecting of the mechanism of said invention, until said letters-patent shall have been obtained.

"12th. And each of said parties agrees with the other, that all improvements, new discoveries, or other additions which he shall make, or in any other manner acquire, in the use, structure, philosophical properties, or other parts of said invention, or for telegraphic purposes of any description, or in any way affecting said invention, he shall communicate as soon as may be practicable to each of the said parties; and the same shall be held, esteemed, and owned as the property of each in the ratio of his property in the original invention; and all letters-patent that shall be obtained therefor of any government, shall be in that ratio, the property of each, and of his heirs and assignees, respectively. And the expenses of obtaining letters-patent for such improvements or additional discovery, shall be borne by said parties severally, in the ratio of their respective rights and interests therein, in all cases of the kind that shall hereafter arise.

"13th. It is also agreed by all parties herein before named, that all expenses that shall be incurred by either of said parties with the approbation of the proprietors of a majority of the property in said invention, and other than the expenses and services particularly specified in this instrument, and other than personal services, shall be borne by and assessed upon said proprietors in the ratio of their respective interests—so far as the same shall be incurred for the common benefit, and in managing and conducting the common interests of such proprietors, but the same shall be recoverable from, and payable only in proceeds of said proprietors' sales of rights to use said invention, and not otherwise; and until such proceeds shall equal such expenses of any proprietor, such expenses shall remain at the risk of him who shall incur them, unless a written assent thereto shall be given previously by each proprietor.

"14th. It is further mutually agreed by said parties, that all relations existing expressly or impliedly, between said Morse and the government of the United States, relative to the use and sale of said invention, to said government, shall be recognized and carried out in good faith by said parties conjunctively, in the full extent that said Morse is bound thereby, and for the common and joint benefit and interest of said proprietors in the ratio of their rights and property in said invention within the United States.

"15th. It is also agreed, that excepting the negotiations which may be conducted without the limits of the United States, by the said Smith as herein before provided, and during his first mission abroad; no negotiation or sale of rights to use said invention, to or by any government or individual, and no contract in any way affecting the manufacture or use of the mechanism of said invention, shall be made or entered into by any of the said proprietors, without the assent and concurrence of all the proprietors herein before named, or of their legal representatives.

"In testimony whereof, the said parties have hereunto interchangeably set their hands and seals, on the day and year aforesaid, at said city of New York. (Signed.) Samuel F. B. Morse, (L. S.) Francis O. J. Smith, (L. S.) Alfred Vail, (L. S.) Leonard D. Gale. (L. S.)

"These presents witnesseth, that Samuel F. B. Morse and Alfred Vail, by their attorney, Amos Kendall, of the first part, and Francis O. J. Smith, of the second, being sole owners of Morse's letters-patent of the electromagnetic telegraph in the United States, have agreed and hereby doth agree to and with each other for the better and more effective management of their joint interests remaining unsold, or not under contract for sale, as follows:—

"That said Smith shall have full and exclusive power to bargain, sell, and convey any and all routes for the construction and use of said Morse's above-named patents, and of all his improvements thereto, not hitherto sold or placed under contract, within the following territory, namely, in all of the territory of the United States bounded on the south by the route extending from Pittsburg to St. Louis, via Wheeling, Columbus, Cincinnati, and Louisville, thence to St. Louis by any route said Smith shall elect, and on the west and north by the western and northern boundaries of Illinois, Wisconsin, Michigan, and Ohio, and on the east by the eastern boundary of Ohio, to the intersection of the telegraph route from Wheeling to Columbus, opposite Wheeling; also all within the boundaries of New York and the New England states. And that said Kendall, in like manner, shall have full and exclusive power for and in behalf of the first party, to bargain, sell, and convey any and all other routes for the construction and use of said Morse's patent, not hitherto sold, or placed under contract within all the remaining territory of the several states of the Union now existing.

"And the sales of each party within his said territory, made pursuant to the provision of these presents, shall be ratified and concurred in, by the other party, from time to time, as may be required, and by due and legal process of conveyance.

"The manner of disposing of such lines and realizing cash therefor, shall be such as the respective parties shall in their discretion think best for the common interest; and each shall account to the other for money realized by him, whether from absolute sales or participation in the profits of construc-

tion, or in any other mode out of the common property: provided, that neither shall be bound to account to the other for more than fifty dollars per mile, on any route, as the aggregate belonging to the owners of the patents.

"The terms of payment for sales made, shall be twenty-five per cent. of the amount that shall be raised and paid as the first instalment, for construction purposes on the route sold, and a like proportion of every succeeding instalment until the aggregate shall have been paid. And no contract or sale shall be made to extend the omission of the first payment longer than nine months from the date of the contract, or to delay any succeeding instalment beyond the period of sixty days from the prior one. And no conveyance of the letters-patent for any route, shall be made, until the entire price of purchase has been paid.

"Neither of said parties shall charge for his personal services, or expenses of himself, or of any agent he may employ, nor incur any liability in behalf of the other party, in effecting such sales beyond the requisite terms of a conveyance.

"A report shall be made by each party to the other at the end of every September, December, March, and June, of all sales made by him during the quarter so ending. And of all payments received on sales, and such other particulars as either party may require. And payments shall then be made by each to the other, of all collections on the joint interests of said parties up to such periods, as follows:—

"Said Smith shall pay said first party three fourths of all such collections on sales as he shall have made, and of sums of money any way realized as aforesaid, deducting therefrom ten per cent. for commissions. And said Kendall shall pay said second party one fourth of all such collections on sales as he shall have made, and of all sums so as aforesaid realized, deducting therefrom ten per cent. for commissions.

"And it is agreed that the arrangement therein stipulated for the management of said interests within the territorial divisions herein described, shall continue in full force between said parties and their legal representatives, for the period of six years from the date hereof, unless sooner revoked by mutual consent.

"In testimony whereof, said parties have hereunto set their hands and affixed their respective seals, at the city of New York, in duplicate parts, on this twenty-second day of June, one thousand eight hundred and forty-seven. Samuel F. B. Morse. Alfred Vail, (L. S.) by their attorney. Amos Kendall, (L. S.) Francis O. J. Smith, (L. S.)

"In the presence of J. J. Speed, Jr., E. Cornell."

Mr. Parke, for complainant.

Mr. Choate and F. O. J. Smith, contra.

CURTIS, Circuit Justice. Upon the preliminary questions raised in this case, I feel no difficulty. The principal of these is, that, since the letters-patent were extended, there has been no trial of the right, and no such length of possession as lays the foundation for a presumption of its validity. It appears that during the original term of fourteen years, it was decided by the supreme court after full examination of the law and facts, that Morse was the original and first inventor of all that was claimed in his reissued letters-patent, save the subject-matter of the eighth claim, which is of no importance here, and that those letters-patent were valid. The act of congress of July 4, 1836, § 18 (5 Stat. 124), after providing for the extension of letters-patent and the making and recording of the necessary certificates thereof, declares: "And thereupon the said patent shall have the same effect in law, as though it had been originally granted for the term of twenty-one years." It is manifest therefore that the exclusive right now claimed is the identical, exclusive right adjudicated on, and held valid by the supreme court, and that the court is commanded in express terms, to consider it as if it had been originally granted for a period not yet expired, provided it was duly extended, according to the requirements of the act of congress. There is a suggestion of fraud in one of the answers filed in the case. But no evidence, in support of the suggestion has been produced, nor has it been relied on in argument. I cannot presume that any fraud existed. Of all matters necessary to a valid extension, there is not only a strong presumption, arising from the act of extension, but, in respect to the entire merits of the patentee, and the existence of the legal grounds for an extension, the law makes the commissioner the judge, and in the absence of fraud his adjudication is conclusive. I entertain no doubt therefore, that there is such a prima facie title to the exclusive right made out, as calls on the court to protect it by injunction, provided the defendants have not shown, that they have acquired some title to the use they make of Morse's invention.

It was urged by the defendants' counsel, that as this is an application for a preliminary injunction, it ought not to be granted, because the defendants have answered and denied the complainant's title, and asserted title in themselves. But the practice of this circuit has been settled since the case of Poor v. Carleton [Case No. 11,272]. A mere denial by an answer, of the equity of the bill, does not prevent the court from looking into the law and the facts of the case, when a special injunction is moved for, and granting or refusing it according to its discretion. And where the title to an injunction does not depend upon any controverted or doubtful facts, but upon the interpretation to be put by the court upon a written instrument, I

consider it my duty to interpret it on such a motion and grant or refuse the injunction according to the result of that interpretation. There may be cases in which there is so much doubt what the parties to an instrument intended to effect by it, that the court may think it proper to suspend its judgment until the surrounding circumstances can be more fully and safely examined on a final hearing. It is possible also, that where there are grave doubts concerning the legal effect of an instrument, the court might decline to interfere by special injunction, even though, if compelled to decide, their decision must be in favor of the complainant. Probably the circumstances of the case, and the degree of mischief which would be suffered by refusing the injunction, compared with the inconvenience and loss occasioned by granting it, would control the action of the court in the case supposed. But in general, I apprehend that if the title to a temporary injunction depends on the construction of a deed, the court will construe it and act accordingly, whatever view of that question the answer may have presented. I have therefore looked into the documents on which the title of the respondents depends, and will now state my opinion thereon.

The defendants claim under Francis O. J. Smith. His title was originally granted to him by Morse. by a deed dated on the —— day of March, 1838. The subject-matter of this grant is thus described in the deed. (Here the judge read the clause beginning, "fourth part of my said invention," &c., to the end of paragraph.) At the date of the deed no letters-patent had been obtained. The deed could not convey, and does not purport to convey an interest in any particular letters-patent, or in any exclusive right secured by any particular letters-patent. It purports to convey "one undivided fourth part of the invention." As is said by the supreme court in Gayler v. Wilder, 10 How. [51 U. S.] 493, "the discoverer of a new and useful improvement is vested by law with an inchoate right to its exclusive use, which he may perfect and make absolute by proceeding in the manner which the law requires." It was one quarter part of this inchoate right, which the deed undertook to convey. But the inventor has not only an inchoate right to obtain letters-patent securing to him the exclusive right to his invention for the term of fourteen years, but also a further inchoate right to have the term extended, provided he shall fail, without fault, to obtain a reasonable remuneration for the time, ingenuity, and expense bestowed upon the same, and the introduction thereof into public use. Though it has not been expressly determined that this last right is the subject of a contract of sale, I conceive there can be no reasonable doubt that it is so. The reasoning of the court in Wilson v. Rousseau. 4 How. [45 U. S.] 646, assumes and indeed asserts that it is so.

And there is nothing in the nature or incidents of such a right, to distinguish it as a subject of sale, from the inchoate right to obtain the original patent. Each appertains to the inventor by reason of his invention. Each is incomplete, and its completion depends upon the compliance by the inventor with conditions, and the performance by public officers of certain acts, prescribed by law. It is true, the title of an inventor to an extension is still further qualified by a further condition, of his failure to obtain remuneration from the enjoyment of the exclusive right, for the first term of fourteen years. But though this is an additional condition, which may render parties less willing to contract, its existence does not change the nature of the right, and it no more prevents it from being the subject of a contract of sale, than any other condition which is attached to it.

Considering, then, that the title of an inventor to obtain an extension may be the subject of a contract of sale, the inquiry in this case is, whether part of it was intended to be sold. I am inclined to the opinion that a sale of "the invention," before letters-patent are obtained, does not necessarily carry with it the exclusive right for the extended term. Because this right is not a mere incident of the invention. Its existence is made to depend, not only on matter which is subsequent to the invention, but exclusively personal to the inventor himself; and only he or his personal representatives can obtain it. This may distinguish the case from Carnan v. Bowles, 2 Brown, Ch. 80. See, also, Pierpont v. Fowle [Case No. 11,152]. But at the same time, it must be admitted, that where an inventor has in terms, sold to another person, a part of his invention, he has done that which is quite consistent with an intent to have that other person participate in all the rights which he, as inventor, can acquire by law; and that where the invention is the subject sold, it would be natural to expect to find in the instrument of sale, something showing an intention, that the purchaser should be interested not merely in the original letters-patent, but in any extension thereof securing the exclusive right to the same invention which was the subject of the sale. Taking the whole of this deed together, 1 think it quite clear such was the intention of its parties. It superadds to the words "my invention," the words, "rights and property that I may have from any letters-patent for the same." These terms are broad enough to include the extended letters-patent now in question. Passing over some intermediate clauses which are not decisive, though they tend to show that a community of the entire interest was contemplated, we come to the covenant of the grantor, "to account, from the date hereof, to the said Smith. in the proportions before named, for all the proceeds of sales of rights to use said invention in any place or country, that may accrue to me at

any time." It can hardly be doubted that the accountability raised by this covenant was intended to be no more than co-extensive with the grant. It was manifestly inserted by reason of, and more perfectly to secure the benefit of the title conveyed; and so far as there is room for doubt upon the language of the granting part of the deed, this covenant may be resorted to, for the removal of that doubt. Looking at the deed from this point of view, I find the intention of the parties was, to have the grantee interested in the rights springing from this invention, not merely during the limited period of fourteen years from the date of letters-patent, but "at any time." This view of the rights of the parties is confirmed by the indenture, which bears the same date, and which had for its object, to settle the relative duties and powers of those who had become what it terms, "joint owners of the invention."

Without examining the different clauses of this deed in detail, it may be said that throughout its provisions, no expectation is shown, that they will cease to be in force or applicable at the expiration of any particular letters-patent; or that any thing less than what is denominated in the sixth article, "the continuance of said invention as a patent right," was considered to be the subject-matter upon which they were contracting. That it was the invention, and all rights to use it, which might at any time be acquired, which the parties had in view, seems to me clear, upon the whole instrument. Nor do I understand that Professor Morse has, at any time, or does now, take a different view of this matter. His letter of the 15th July, 1854, written soon after the extension, though it denies Mr. Smith's legal title, and is worded with a caution, quite consistent with the utmost fairness of intention on his part, certainly does not controvert the equitable title of Mr. Smith to participate in the proceeds of sales of rights under the extended patent. But I am of opinion that this cannot be conceded, without admitting at the same time that Mr. Smith became the owner of one undivided fourth part of the inchoate exclusive right, during the extended term. There was but one sale made by the deed of March, 1838. And if one undivided fourth part of the inchoate right to be secured under any and all letters-patent, was the subject of that sale, as I think it was, Mr. Smith owns the same interest under the patent after it was extended as he owned before it was extended. I do not think what he thus acquired, was merely a right to an account of the proceeds of sales. It is not necessary in this case to determine, whether the interest of Mr. Smith became a legal title to one undivided fourth part of the original letters-patent as soon as they were issued; nor whether he was one of the assignees or grantees provided for in the 18th section of the patent act of 1836. Gayler v. Wilder, 10 How. [51 U. S.] 493. That he was an eq-

uitable owner, and entitled to call for a conveyance of the legal title to whatever was intended to be secured to him, seems very clear. For the inventor not only bargains, sells, and conveys one undivided fourth part of all rights which he may acquire from any letters-patent, but he expressly covenants, to execute deeds of conveyance of such undivided part, as soon as may be after letters-patent shall have issued. If this, by operation of law, did not give Mr. Smith a legal title, a jus in re, it clearly conferred on him a jus ad rem, an equitable right to the thing itself, and was not a mere executory contract to account for proceeds. Under the original letters-patent, the indentures of March, 1838, and June 22, 1847, show that all parties considered and treated him as a joint owner of these letters-patent. and entitled to make sales of rights secured thereby. Whatever rights he acquired by force of the deed of March, 1838, under the original, I am of opinion he had by force of the same deed, under the extended letters.

As has already been said, it is not material in this case whether his title was legal or equitable, for a court of equity, upon a bill by the legal owner of a patent right, cannot enjoin the equitable owner from using the thing patented. It considers the equitable title the true title. This case, therefore, must stand as if Smith had that legal title which Morse is under covenant to convey to him. And in that case it could not be doubted that the suit must fail. One tenant in common has as good right to use, and to license third persons to use the thing patented, as the other tenant in common has. Neither can come into a court of equity and assert a superior equity, unless it has been created by some contract modifying the rights which belong to them, as tenants in common. No such modification appears here, and the motion for an injunction must be denied.

[NOTE. On the final hearing the bill was dismissed. Case No. 2,910.

[For other cases involving this patent, see note to Smith v. Ely, Case No. 13,043.]