The RAIL-TRAILER CO., Plaintiff-Appellant,

v.

ACF INDUSTRIES, INC., Defendant-Appellee.

No. 15277.

United States Court of Appeals Seventh Circuit.

March 16, 1966.

Curtis F. Prangley, Douglas O. Baird, Chicago, Ill., for appellant.

Victor P. Kayser, Chicago, Ill., John Hoxie, New York City, C. Lee Cook, Jr., Chicago, Ill., Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., Davis, Hoxie, Faithfull & Hapgood, New York City, of counsel, for appellee.

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

The Rail-Trailer Co., plaintiff-appellant, co-owner with ACF Industries, Inc., defendant-appellee, of U.S. Patent No. 3,145,006, entitled "Collapsible Trailer Support and Anchor", brought suit in the District Court for a declaratory judgment that an exclusive license to make the invention granted by the plaintiff to the defendant is null and void, unenforceable as an agreement in restraint of trade, and that plaintiff is entitled to make, and

to license others to make, the patented device. The license was granted while the application for the patent was pending and insofar as here pertinent provides:

"* * * said The Rail-Trailer Company by these presents, to the extent of its interest in the patent application, the invention covered thereby and all patents issuing thereon, hereby grant unto the said ACF Industries, Incorporated (American Car and Foundry Division), an exclusive, irrevocable, royalty-free license to make the invention disclosed in the above mentioned patent application."

An officer and employee of Rail-Trailer, together with two employees of ACF Industries, had made application for the patent and also had executed an assignment of the application to the plaintiff and the defendant by virtue of which the plaintiff became owner of an undivided one-third interest, and the defendant became owner of an undivided two-thirds interest, in the application and in the patent which subsequently issued.

■ In the posture in which the pleadings finally settled no issue of any material fact was presented for adjudication and the District Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure (28 U.S.C.A.), heard and considered the matter on the defendant's motion for a summary judgment, granted said motion, and entered a judgment order dismissing plaintiff's complaint with prejudice. Plaintiff by its appeal has elected to stand on its complaint with the consequence that the order appealed from, although merely dismissing the complaint, is regarded as a final appealable order. Asher v. Ruppa, 7 Cir., 173 F.2d 10;

Duane v. Altenburg, 7 Cir., 297 F.2d 515, 518.

The plaintiff seeks a reversal on the ground the District Court erred as a matter of law in concluding that the license agreement is not an unlawful contract in restraint of trade under the common law and in violation of Section 1 of the Sherman Act (15 U.S.C.A. § 1) and therefore void and unenforceable to bar plaintiff, a joint owner of the patent, from exercising the right to make, and to license others to make, the patented device.

The plaintiff's basic contention is that inasmuch as the grant of a patent confers on the owner only the right to exclude others from making, using or selling the invention [1] and, under the patent laws, the joint owners of a patent each have an independent right to make, use or sell the invention, and to grant non-exclusive licenses to others to do so, without the consent of and without accounting to the other co-owner or co-owners,[2] it must follow that the only purpose and effect of a grant by a joint owner of the patent to his co-owner of an exclusive license to manufacture the invention is the exclusion of the grantor from his right to manufacture the invention, and such a license therefore constitutes an agreement not to compete and unless it is ancillary to a joint venture of the parties is an illegal contract in restraint of trade.

■ But, in our opinion, the conclusion the plaintiff so draws fails to give effective consideration to two highly relevant factors. First, a patentee may, without divesting himself of ownership of the patent, grant an exclusive license for the manufacture of the patented device, which license serves to exclude the patentee himself from engaging in the

1. 35 U.S.C.A. § 154; Bloomer v. Mc-Quewan, 14 How. 539, 55 U.S. 539, 14 L.Ed. 532; United States v. American Bell Telephone Company, 167 U.S. 224, 239, 17 S.Ct. 809, 42 L.Ed. 144; Continental Paper Bag Company v. Eastern Paper Bag Company, 210 U.S. 405, 424, 28 S.Ct. 748, 52 L.Ed. 1122; Crown Die & Tool Company v. Nye Tool & Machine Works, 261 U.S. 24, 35, 43 S.Ct. 254, 67 L.Ed. 516; Blackledge v. Weir & Craig Mfg. Co., 7 Cir., 108 F. 71, 73.

2. 35 U.S.C.A. § 262; Blackledge v. Weir & Craig Mfg. Co., 7 Cir., 108 F. 71; Central Brass & Stamping Co. v. Stuber, 7 Cir., 220 F. 909, 911–912; Drake v. Hall, 7 Cir., 220 F. 905.

manufacture of the device, and which action, without more, does not constitute an illegal restraint of trade or violation of the anti-trust laws. This is so because the restraint arises from the patent grant and a lawful transfer of a part of the rights to which that grant attached. United States v. General Electric Company, 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362; Bement & Sons v. National Harrow Company, 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058; Brownell v. Ketcham Wire & Mfg. Co., 9 Cir., 211 F.2d 121, 129. Second, Section 262 of the Patent Act (35 U.S.C.A. § 262) recognizes the right of joint owners of a patent to contractually modify their interests in the jointly-owned patent. It is only "[i]n the absence of any agreement to the contrary" that the section recognizes the independent right of each joint owner to "make, use or sell the patented invention without the consent of and without accounting to the other owners". Prior to the enactment of Section 262, this Court as early as 1901 in Blackledge v. Weir & Craig Mfg. Co., 7 Cir., 108 F. 71, 72, referred to Clum v. Brewer, 2 Curt. 506, as recognizing that "[n]either [joint owner] can * * * assert a superior equity, unless it has been created by some contract modifying the rights which belong to them as tenants in common". From the standpoint of the public purposes underlying the prohibitions against unreasonable restraints of trade it logically follows that if, as has been uniformly recognized by the courts, a sole owner of a patent may by the grant of an exclusive license bar himself from making the invention without running afoul the Sherman Act or the common law prohibition of unreasonable restraints of trade, certainly a joint owner of a patent, the possessor of a less extensive and singularly qualified "monopoly" should be able to do so in favor of his co-owner. We perceive nothing in the policy of the law as reflected in the decisions and in the pertinent statutory provisions which requires otherwise. And, this is particularly so in the light of the fact that, as aptly observed in Talbot v. Quaker-State Oil Refining Co., 3 Cir., 104 F.2d 967, 968, the relationship between co-tenants of a patent is such that each co-owner is "at the mercy" of the other in that the right of each to license independently "may, for all practical purposes, destroy the monopoly and so amount to an appropriation of the whole value of the patent".

We have examined and considered the numerous cases cited and relied upon by the plaintiff but find them neither apposite to nor dispositive of the issue here presented for determination. Among the authorities to which the plaintiff has made repeated references are Kinsman v. Parkhurst, 18 How. 289, 59 U.S. 289, 15 L.Ed. 385, and McCullough v. Kammerer Corporation, 9 Cir., 166 F.2d 759. In *Kinsman* the two joint owners of a patent entered into a co-partnership for the manufacture and sale of the patented machine. The legality of the partnership contract, as against a contention that it was void as being in restraint of trade, was determined without reference to the effect of the provisions of the agreement concerning the patent rights or to the validity or invalidity of the patent involved, the Court observing that "[i]t is a very common and not an illegal stipulation in partnership articles, that neither partner shall carry on that business for which the partnership is formed, outside of the partnership and for his own account". The decision contains nothing to indicate that the grant of an exclusive license by a joint owner of a patent to his co-owner is of itself illegal as being in restraint of trade unless such grant is ancillary to a joint venture of the co-owners. And, in *McCullough* the license involved was found illegal because it contained provisions restraining competition in other products which might compete with the patented devices, not for lack of an ancillary joint venture of the parties. This was recognized and pointed out in the subsequent decision of the Ninth Circuit in Cutter Laboratories, Inc. v. Lyophile-Cryochem Corporation, 9 Cir., 179 F.2d 80, 93, in which the Court after observing that:

"Any patent owner who grants an exclusive license, reserving no right ex-

cept to collect royalties, cuts himself off from practicing the art claimed in the patent until the patent has expired."

pointed out in a footnote:

"McCullough v. Kammerer Corp., 9 Cir., 166 F.2d 759, is not in point. The license agreement was held illegal there not because the licensee agreed to refrain from dealing with devices covered by any patents which either of the parties might own or be entitled to obtain, but because he agreed to refrain from the use of devices which were not patented at all or were patented by outside parties and which might come into competition with the patented devices. There is no agreement of that sort here."

We are of the opinion the District Court's finding and conclusion that the license is not unlawful as being in restraint of trade represents an application of correct legal criteria. The judgment order appealed from is therefore affirmed.

Affirmed.