LEVI CASE COMPANY, INCORPORATED, a New York corporation, Plaintiff,

v.

ATS PRODUCTS, INC., a California corporation, and Lawrence E. Shea, Defendants.

No. C–89–2593–VRW.

United States District Court, N.D. California.

April 9, 1992.

H. Mathew Moore, Howard, Rice, Nemerovski, Canady, Robertson & Falk, P.C., San Francisco, Cal., for defendant Lawrence E. Shea.

Phyllis E. Andelin, Michael P. Faulkner, Proskauer Rose Goetz & Mendelsohn, San Francisco, Cal., for defendant ATS Products, Inc.

Khourie, Crew & Jaeger, P.C., Eugene Crew, Daniel J. Furniss, Laurie Donahue, San Francisco, Cal., for plaintiff Levi Case Co., Inc.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON CONSPIRACY ISSUE

WALKER, District Judge.

### I. BACKGROUND FACTS.

Lawrence Shea is the holder of three patents for a resin-based fiberglass type of heating, ventilation and air conditioning ("HVAC") ductwork. The ductwork produced by Shea's method is recognized by both plaintiff and defendant as superior for certain indoor environments. In the broader market for HVAC ductwork, ductwork made through Shea's process competes with ductwork made of other fiberglass compounds, steel, plastic and polyester.

In 1978, Shea formed ATS Products, Inc. ("ATS") to exploit Shea's patents. Shea became an officer of ATS and was the majority shareholder. Shea conveyed to ATS the "exclusive license throughout the world" to use Shea's three patents. The agreement provided that Shea be paid royalties, that Shea and ATS share improvements in the technology, that ATS purchase materials for fabricating the ductwork from suppliers designated by Shea, and that Shea would hold veto power over a decision by ATS to sublicense the patent or assign the license to a third party.

In 1986, ATS, represented by Shea, and Shea individually, entered into a non-exclusive sublicensing agreement with Levi Case, a manufacturer of ductwork, to manufacture ductwork using Shea's patents. This agreement was effective January 1985. A dispute arose as to the parties' performance under the 1985 agreement, and in 1988 the parties renegotiated. Levi Case was, and still is, ATS's only competitor in the market for ductwork produced using Shea's patents.

In May 1989, Shea and his fellow shareholders sold 100% of ATS to Sterling Imperial Corp. Under the terms of the sale, ATS became a wholly-owned subsidiary of Sterling Imperial. The exclusive licensing agreement between Shea and ATS was terminated, and a similar exclusive licensing agreement was executed between Shea and Sterling Imperial. The new licensing agreement recognized the continued existence of the sublicense to Levi Case, and also authorized a sublicense of the patents to ATS. In conjunction with the sale of ATS, Shea's previous relationship with ATS as an officer and director was terminated, and Shea instead entered into consulting and non-competition agreements with Sterling Imperial.

Soon after the sale of ATS to Sterling Imperial, the relationship between ATS and Levi Case worsened. Both parties accused the other of breach. Soon thereafter, Levi Case filed this lawsuit, against ATS only, alleging breach of contract and various business tort claims.

### II. PROCEDURAL MATTERS.

In July 1991, the court permitted Levi Case to file an amended complaint, dropping certain of the business tort claims and

**430**

adding Shea as a defendant to a declaratory judgment claim. Most importantly for the purposes of this motion, the amended complaint also added claims against both ATS and Shea under sections 1 and 2 of the Sherman Anti–Trust Act, 15 U.S.C. §§ 1, 2, alleging (1) conspiracy to restrain trade in violation of Sherman Act § 1, against both ATS and Shea; (2) conspiracy to monopolize the relevant market in violation of Sherman Act § 2, against both ATS and Shea; and (3) unilateral attempt to monopolize the relevant market in violation of Sherman Act § 2, against ATS only.

Plaintiff's antitrust claims are premised on a document which Levi Case obtained through discovery, which indicates, according to Levi Case, that Levi Case's contract troubles with ATS were in fact due to defendants' efforts to monopolize the submarket for ductwork produced by using Shea's patents. Of course, defendants deny that they are liable for antitrust violations.

Shea now moves for summary judgment on the antitrust claims, on the ground that, under the teachings of the Supreme Court in the *Copperweld* case, Shea and ATS are legally incapable of entering into an antitrust conspiracy.

Although ATS has not filed a formal joinder to Shea's motion, ATS filed with the court, seven days prior to the noticed hearing date in this matter, a "Memorandum in Support of Summary Judgment on all Conspiracy Claims." In a subsequent brief received by the court, Levi Case objected to the court's consideration of the ATS brief.

The ATS brief, however, can be considered to be a portion of defendants' reply brief to Levi Case's opposition brief. The ATS brief is filed seven days prior to the hearing date, as required by Local Rule 220–3. Therefore, the ATS brief will be considered by the court in connection with Shea's motion, because (1) it is timely filed as a reply brief; and (2) the combined page length of the reply briefs filed by ATS and Shea totals less than the 25–page limit imposed by Local Rule 220–4, and thus could have been jointly filed by the co-defendants.

## III. DISCUSSION.

### A. *An Antitrust Conspiracy Exists Only Where The Alleged Conspirators Have Independent Economic Interests.*

The Sherman Act contains a "basic distinction between concerted and independent action." *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984). Section 1 reaches unreasonable restraints of trade effected by a "contract, combination * * * or conspiracy" between separate actors. 15 U.S.C. § 1; *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768, 104 S.Ct. 2731, 2740, 81 L.Ed.2d 628 (1984); *United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). In contrast, Section 2 covers both concerted and unilateral action, but only in the context of monopolization. 15 U.S.C. § 2.

In *Copperweld*, the Supreme Court determined that a corporation and its wholly-owned subsidiaries were, as a matter of law, legally incapable of "conspiring" for the purposes of § 1. *Copperweld*, 467 U.S. at 771, 104 S.Ct. at 2741. Lower federal courts have applied the *Copperweld* holding to conspiracies to monopolize alleged under § 2. *Potters Medical Center v. City Hosp. Ass'n*, 800 F.2d 568, 573–74 (6th Cir. 1986). The application of *Copperweld* to § 2 conspiracy claims does not, however, immunize defendants from liability for monopolization or attempted monopolization under § 2. *Potters Medical Center*, 800 F.2d at 574. Those theories of liability apply to a defendant's unilateral conduct.

*Copperweld*'s holding was based upon, and further supports, the more general proposition that coordinated activity by parties who lack independent sources of economic power and separate interests does not warrant scrutiny. *Copperweld*, 467 U.S. at 771, 104 S.Ct. at 2741. The Court observed that, for example, a corporation's officers, agents and employees have long been held not to provide the requisite plurality of actors for a § 1 conspiracy. *Id.* at 769, 104 S.Ct. at 2740. The

Court sought to focus antitrust scrutiny on concerted action only if that action "deprives the marketplace of the independent centers of decisionmaking that competition assumes and demands." *Id.*

Although the Court in *Copperweld* expressly limited its ruling to the facts at hand, and decided only that a parent and its wholly-owned subsidiary are incapable of conspiring in violation of § 1, 467 U.S. at 767, 104 S.Ct. at 2739, lower courts have relied upon the reasoning in the *Copperweld* opinion to find that, as a matter of law, a variety of economic relationships lack the plurality of interests necessary for an antitrust conspiracy. For example, in *City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 275 (8th Cir.1988), the court held that a collection of rural electric cooperatives were incapable of conspiring among themselves in violation of §§ 1, 2. Finding that "the logic of *Copperweld* reaches beyond its bare result," the court stated that "[t]he thrust of the [*Copperweld*] holding is that economic reality, not corporate form, should control the decision of whether related entities can conspire." *Id.* at 274–75. The court found that the success of the cooperatives depended upon cooperation among themselves, and held that the practices of the cooperatives were not "a sudden joining of two independent sources of economic power previously pursuing separate interests." *Id.*, citing *Copperweld*, 467 U.S. at 770–71, 104 S.Ct. at 2741–42.

In the Ninth Circuit, related entities are capable of entering into a conspiracy if their interests are sufficiently independent. In *Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1450 (9th Cir.1988), the court found that anesthesiologists with medical degrees were capable of conspiring with a hospital to eliminate competition from nurse anesthesiologists, because the relationship between the hospital and the anesthesiologists was on a competitive, independent-contracting basis. Thus, by eliminating competition from the nurses, the anesthesiologists and the hospital "coalesced economic power previously directed at disparate goals." *Id.* Furthermore, at least one district court in the Ninth Circuit

has adopted the rule, noted by the *Copperweld* court without either approval or disapproval, that a corporation and its officers or employees are capable of entering into an antitrust conspiracy if the officers or employees are "acting on their own behalf." *Bhan v. NME Hospitals, Inc.*, 669 F.Supp. 998, 1017 (E.D.Cal.1987), citing *Motive Parts Warehouse v. Facet Enterprises*, 774 F.2d 380, 387 (10th Cir.1985).

### B. Application of The Copperweld Principles To The Relationships Between Shea and ATS.

The court is aware of no reported case decided since *Copperweld* which has addressed whether a patent holder is legally capable of entering into an antitrust conspiracy with his exclusive patent licensee, but the principles established in *Copperweld* and the ensuing cases provide the necessary guidance for the court. The relationship between Shea and ATS can be a "conspiracy" in violation of the antitrust laws only if it deprives the marketplace of independent actors. *Copperweld*, 467 U.S. at 769, 104 S.Ct. at 2740; *Oltz*, 861 F.2d at 1450.

During the time period of the alleged conspiracy raised in plaintiff's complaint, the relationship between ATS and Shea took two distinct forms. The more significant for the purposes of this motion is the relationship between Shea and ATS after the May 1989 purchase of ATS by Sterling Imperial. The relationship between the two defendants during this period is that of patent holder and sublicensee. Shea had conveyed an exclusive license of his patents to Sterling Imperial, and his only residual rights were to receive royalties and to approve sublicenses.

■ The grant of an exclusive license excludes even the patent holder himself from exercising the rights conveyed by the license. *Rail–Trailer Co. v. ACF Industries, Inc.*, 358 F.2d 15, 16–17 (7th Cir. 1966); *Becton, Dickinson & Co. v. Eisele & Co.*, 86 F.2d 267, 269 (6th Cir.1936); *Smith International, Inc. v. Kennametal, Inc.*, 621 F.Supp. 79, 89 (N.D.Ohio 1985).

432

See also Ernest B. Lipscomb III, 6 *Walker on Patents 3d*, § 20:2. The exclusive license, by itself, does not constitute an illegal restraint under the antitrust laws. *Rail–Trailer*, 358 F.2d at 17.

■ Here, Shea lawfully conveyed an exclusive license in his three patents to Sterling Imperial, and Sterling Imperial executed a lawful sublicense with ATS. Thus, it strains credibility to argue that Shea and ATS had any independent decisionmaking authority regarding the exploitation of the patent, or that any concerted activity the two defendants might take with regard to the patent would coalesce economic power previously directed at disparate goals. Like the interdependence of the electricity cooperatives in *City of Mt. Pleasant*, the economic reality here is that Shea and ATS were not independent sources of economic power. Shea, by virtue of the exclusive license, could not compete in the manufacture of the ductwork covered by the patent. Therefore, no agreement between ATS and Shea involving the exploitation of the patent in which they both held an interest can be considered to deprive the marketplace of "independent sources of economic power previously pursuing separate interests." Even if there were no agreements between them at all, there was no opportunity for them to compete. Thus, they could not "conspire" in violation of the antitrust laws. The only reported case that the court is aware of in which this issue was litigated reached exactly the same conclusion. *Wahl v. Rexnord, Inc.*, 481 F.Supp. 573, 588 (D.N.J.1979), rev'd on other grounds, 624 F.2d 1169 (3d Cir.1980).

Levi Case seeks to make much of the existence of the covenant not to compete executed by Shea and Sterling Imperial at the time of the sale of ATS. According to Levi Case, this proves that Sterling Imperial believed Shea was a potential competitor. This argument is unconvincing. First, Sterling Imperial's beliefs are irrelevant. Second, the relationship between Shea and Sterling Imperial is not at issue, and Sterling Imperial is neither a defendant nor an alleged conspirator. Finally, the existence of the covenant not to compete in the broad HVAC ductwork market does not alter the fact that Shea and ATS, as patent holder and sublicensee, are legally incapable of entering into an antitrust conspiracy involving the subject patents.

■ Nor does the second distinct relationship between Shea and ATS create the antitrust conspiracy necessary for Levi Case to defeat Shea's motion for summary judgment. Prior to May 1989, Shea was employee, officer, director and shareholder of ATS. During this period, Shea, in the role of employee and officer of ATS, is most likely incapable of conspiring with ATS. *Copperweld*, 467 U.S. at 769, 104 S.Ct. at 2740. Only if the court were to adopt the "acting on his own behalf" exception to the longstanding doctrine that a corporation and its agents cannot conspire in violation of the antitrust laws, and even then only if Levi Case could establish a genuine issue of material fact whether Shea was indeed acting on his own behalf during this period, would summary judgment not be appropriate. Yet the above analysis of the post-May 1989 relationship between Shea and ATS establishes that Shea had no independent interest to act upon with regard to the three patents during his tenure as an officer, director and employee of ATS, by virtue of the exclusive licensing agreement then in force between Shea and ATS.

Accordingly, Shea's motion for partial summary judgment is hereby GRANTED. There is no genuine issue of material fact necessary to resolve the question of whether the amended complaint supports any theory of antitrust conspiracy. *Los Angeles Memorial Coliseum Commission v. National Football League*, 726 F.2d 1381, 1387 (9th Cir.1984).

IT IS SO ORDERED.