MADISON JONES v. SARAH J. JONES ET AL.

1. PAROL CONTRACT FOR SALE OF LAND—PLEADING.—A petition to
    enforce a parol contract for sale of land should contain, in clear
    and distinct terms, the contract sought to be enforced, the sum to
    be paid, the time at which the different installments were to be
    paid, the manner of payment or performance, or facts relied upon
    to excuse the literal performance.
2. SPECIFIC PERFORMANCE—INTEREST—RENTS.—Where specific per-
    formance is allowed, and no tender of balance due defendant by
    plaintiff is shown, interest should be allowed to defendant on nec-
    essary outlays he has made on the estate, when rents are charged
    against defendant in possession of the land the subject-matter of
    the litigation.
3. VENDOR AND VENDEE— ADJUSTING OFFSETS. — If the defendant
    take up obligations for plaintiff, whether authorized to do so or not,
    in an account had, there should be allowed to defendant only the
    actual sums paid out.  If debts were taken up with Confederate
    States notes, the value thereof only should be allowed.

APPEAL from Grayson.   Tried below before the Hon. J.
M. Lindsay.

In 1857, Madison Jones bought two quarter sections (320
acres) of University lands in Grayson county, giving two
notes (number 118 and number 119) for the purchase-money
to the State.   On these notes, William G. Jones was surety.

In 1859, Madison Jones contracted with one McKinney
for the sale of the east half of the quarter section for which
note number 118 was executed, McKinney to pay to the
State the purchase-money, and to get a deed from Madison
Jones when patent should issue.

In November or December, 1859, William G. Jones, son
of Madison, married, and at once began improvements upon
the west half of the quarter section for which the note num-
ber 118 was executed.   Improvements progressed, so that in
the spring of 1860 William Jones and his wife moved on the
land and there resided.   They erected a dwelling-house and
out-houses, and inclosed and put in cultivation about thirty

acres of land. The improvements were estimated from $450 to $800 in value.

In the spring or summer of 1862, William entered the Confederate States army, and died in July, 1863, in the Confederate States service, leaving one child, Mary W. Jones.

About the time William joined the army, his wife returned to her father, and Madison Jones took possession of the premises which had been occupied by his son. This possession he held, removing all the houses, and cultivating or leasing the field.

It seems that two payments were made on the note number 118 by William G. Jones before he left home. His father made the remaining payments, and obtained patent in 1864.

Claim was made to the land by the widow, Sarah Jones, in behalf of her daughter and herself. At one time Madison Jones seems to have agreed to make a deed to the eighty acres to his granddaughter, but he changed his mind, and returned the consideration that had been given for that purpose.

May 12, 1871, Sarah J. Jones, widow, in her own behalf and as next friend of Mary W. Jones, daughter of William G. Jones, brought suit in the District Court of Grayson county against Madison Jones for specific performance and for rents and damages, setting up, in substance, that in 1859 defendant agreed and contracted to convey the west half of said 160 acres (for which note number 118 was given) when he should obtain title thereto from the government, " in consideration of said William moving upon said eighty acres of land and improving the same, and paying one-half of all amounts of money due, or that might become due thereafter, to the State of Texas, on account of said tract of 160 acres"; that in accordance with the agreement, said William G. Jones went upon said eighty acres, improved the same, making fields, houses, &c., thereon; paid $265 purchase-money, half that had become due on said note number 118; that defendant, in 1862,

had taken possession of the premises, and converted the same to his own use, &c., alleging rents and damages.

Defendant demurred, pleaded a general denial, and specially set out that he paid the note number 118 to the State, setting out his receipts as exhibits; that his son was largely indebted to him; that since his death defendant had taken up many notes and debts of his son, setting them up as exhibits; denying the alleged contract; insisting that his son never had claimed the land; that defendant had made the improvements on the land, and had furnished his son money to make two payments on said note number 118, &c.

The plaintiffs amending, alleged that William G. Jones in his lifetime had placed property in the hands of defendant of value of $300; that defendant's outlay to the State was in Confederate money, and that plaintiff had offered to pay defendant all his outlay made in obtaining the title, &c.; that said deceased had paid to the defendant in good money and in property greater value than had been paid by him.

By further amendment, plaintiffs alleged that, after the payment of $265 by the said William G. Jones on the purchase-money, the defendant abandoned the contract and refused to permit plaintiff (the widow, &c.) to go on with the contract; that plaintiff (the widow) offered to comply with her husband's contract, offering to pay defendant all his outlay; that she had tendered to defendant all the expenses he had been to on account of the land; that he refused to accept the same; plaintiffs, in pleading, offered to refund to defendant his outlay, &c.

The defendant excepted to the petition—

1. Because there is no sufficient contract in terms set out to entitle the plaintiffs to specific performance.

2. The payment of the money is not sufficiently alleged.

3. The allegations in the petition are inconsistent and contradictory.

4. Plaintiffs do not show that any tender was ever made, nor do they tender or state the amount due.

5. They have never tendered the money and costs of this suit into court.

The exceptions were overruled. The jury found a verdict as follows:

" We, the jury, find for plaintiffs as follows:

| | | |
|---|---:|---:|
| Statement of amount paid by William Jones, deceased, on one-half of note 118 amounts to......... | $666 | 00 |
| Interest on same to first payment....................... | 52 | 80 |
| | $712 | 80 |
| Deduct amount of first payment........................... | 83 | 16 |
| | $621 | 64 |
| Interest to time of second payment...................... | 50 | 37 |
| | $680 | 01 |
| Deduct second payment.................................... | 81 | 85 |
| | $598 | 16 |
| Interest on $580.16 for two years, or until payment was refused by defendant.... ........................ | 95 | 70 |
| Amount due by William Jones, for which Madison Jones is entitled to a credit............................. | $693 | 86 |

Madison Jones, debtor to plaintiff:

| | | |
|---|---:|---:|
| Value of horses received. ....................... | $225 | 00 |
| Rent for 11 years, at $45 per year........... | 495 | 00 |
| Balance due plaintiff............................. | 26 | 14 |

1st. The eighty-acre tract of land claimed in petition.

2d. Twenty-six $\frac{14}{100}$ dollars balance due plaintiff on house and rents, of which the above is a statement."

On the verdict, judgment was rendered for the plaintiffs for the eighty acres sued for, and twenty-six $\frac{14}{100}$ dollars.

Motion for new trial was overruled, and defendant below appealed.

*Haré, Bledsoe & Head,* for appellant.

I. The appellant's exceptions should have been sustained. This is a suit brought to enforce the specific performance of a verbal contract to convey real estate. The pleadings, then, should show clearly and specifically all the terms and conditions of the alleged contract; the amount of the consideration to be paid; when the consideration was to be paid; to whom and how the consideration was to be paid; and should then show a literal compliance with all the conditions, and especially that all the consideration had either been paid or tendered at the institution of this suit, and the other equitable grounds necessary. And all this should be done clearly and without ambiguities or contradictions. (Taylor *v.* Ashley, 15 Tex., 55 ; 2 Story's Eq., sec. 764.)

II. If appellant paid the debts of William G. Jones with his own money, and took up his notes, these notes would certainly be a good offset against any money that might have been paid by William G. Jones on appellant's note to the State of Texas for this land, and also against appellee's claiming as his representative. (Smalley *v.* Trammel, 11 Tex., 10 ; Dickenson *v.* McDermott, 13 Tex., 252; Guthrie *v.* Guthrie, 17 Tex., 543; Mitchell *v.* Rucker, 22 Tex., 66.)

III. At the time of this pretended verbal sale, the land in controversy was a part of the homestead of appellant and his wife. That appellant could not make a verbal sale of his homestead, we consider too plain for argument. It would be in direct contravention of the Constitution, which says "that a man shall not sell his homestead without the consent of his wife." (Const. 1845, art. 7, sec. 22.) It would be in contravention of the act of the 30th of April, 1846, prescribing the manner in which a married woman must consent to a sale of her homestead. (Paschal's Dig., art. 1003.) The manner pointed out by this statute must be pursued, and if not the sale is a nullity. (Welch *v.* Rice, 31 Tex., 688; Murphy *v.* Coffey, 33 Tex., 510; Holloway *v.* Holloway, 30 Tex.,

164; Cross v. Everts, 28 Tex., 532; 22 Tex., 628; 25 Tex. Supp., 109; 25 Tex., 148; 4 Tex., 62.)

*Walton, Green & Hill,* for appellees.

I. The transaction was not a sale of land, but the verbal sale of the contract with the State. The title to the land vested in the State, and continues so to do until the purchase-money should be paid. The sale was strictly the sale of a right founded in contract, which was conditional in its terms, which terms being complied with gave right to the land. After the sale of the right, the vendor had no longer any legal connection with the contract, and any action taken by him was as a volunteer. If the terms were not complied with, the vendor lost nothing. Why? For the simple reason that he had before the sale paid nothing, and by the act of sale became a stranger to the right and the contract sold or transferred by him.

II. The part payment of the purchase-money to the State by the vendee (the son) due for the land, vested in him a beneficial interest. That could not be divested, save to the State, on and by the non-payment of the remainder of the purchase-money.

III. The father, (the vendor,) as a volunteer, paid the remainder of the purchase-money, and took patent in his own name.

What was his status to the son by taking the patent? Clearly that of a trustee, coupled with an interest in the shape of a lien for the purchase-money which he had advanced. In that relation, what could he legally demand? Certainly nothing more than the payment to him of the money which he advanced, with the interest thereon. This was done not in money direct from first hands, nevertheless money derived from the use and occupation of the trust property. See verdict of jury.

IV. Refunding to the father the money advanced, entitles the wife and child of the son to the decree of recovery

they obtained. But, again, suppose the sale was of land, and not of a right to land on conditions, then the same legal result follows; because the part payment of the purchase-money, the possession, and permanent valuable improvements, relieved against statute of frauds and the rights of the vendee, were fully preserved and recognized by the law, and became enforcible in equity.

If, however, we are, by the court, forced away from the position assumed, and compelled to occupy the attitude of seeking a remedy in the nature of specific performance, we think that on the facts in the case, under the law applicable thereto, the decree can be maintained.

1. The pleading, as alleging the contract and compliance with terms, is sufficient, under the authority cited by the appellant, (15 Tex., 55,) and also to the stricter rule as laid down in Murphy *v.* Stell, decided at the present term.

2. The possession, payment of part of the purchase-money, and making valuable improvements, took the sale away from the statute of frauds. (Taylor *v.* Ashley, 15 Tex., 50; Dugan *v.* Colville, 8 Tex., 128; Neatherly *v.* Ripley, 21 Tex., 435, and many other cases which announce the same rule.)

V. The purchase being made verbally, and possession taken, improvements made, and part purchase-money paid, the only question that remains is,—Did the ancestor of plaintiffs, in his life, directly or indirectly, or did the plaintiffs, since the death, directly or indirectly, pay the remainder of the purchase-money, so as to entitle them to the title in fee to the land? The record answers the question. While no money was paid directly on the balance due as purchase-money, yet money was received to the extent of the whole balance from the rents, use, and occupation of the premises.

MOORE, ASSOCIATE JUSTICE.—Although the result reached by the verdict of the jury may not materially vary from our conception of the abstract justice and equity of the case as exhibited by the facts developed upon the trial, there are pal-

· pable errors shown by the transcript of the record of the proceedings in the court below, for which the judgment must be reversed.

Neither the petition nor amended petitions of the appellees (the plaintiffs in the court below) present in clear and distinct terms the contract sought to be enforced, as is required in an action of this kind; neither the aggregate amount to be paid for the land, nor time at which the different installments were payable, is stated; and the averments of performance, or of the facts relied upon to excuse literal performance of the contract on the part of the alleged purchaser, are certainly but vaguely and indefinitely stated,—if, indeed, the averments of the petition and amended petition in these particulars are not repugnant and contradictory. It is a fundamental rule, in actions of this character, that the consideration for the agreement, the time and manner of its performance, and in fact all of its essential terms and stipulations, must be clearly and definitely alleged as well as proven, to warrant the court in granting the relief here sought. As the petition was defective in these particulars, although a meritorious ground of action may be inferred from its averments, we think it clear that some at least of appellant's special exceptions should have been sustained. (Gaskins v. Peebles, 44 Tex., 390.)

· There is also error in the verdict of the jury, in the statement of the account between appellant and William G. Jones. The plaintiffs in the court below do not pretend that more than two or three installments of the purchase-price for the land had been paid, when he (i. e., William G. Jones) died; nor do they deny that the largest part of the purchase-money was actually paid by appellant after his death; yet they neither alleged nor proved a legal or *bona-fide* tender to appellant of the balance of the purchase-money thus paid by him, to which he is unquestionably entitled if appellees recover the land. It was, therefore, error to charge him with rent, and refuse to allow him interest on the balance of the purchase-money which he had paid on the land in place of plaintiffs or their

.intestate, as by the terms of the contract upon which the suit is founded it should have been.

To avoid error on another trial, it is proper for us to say, if the facts sustained appellees' theory of the case, appellant, who was authorized by his son William G. Jones to take possession of and sell his property for the payment of his debts, unquestionably was not entitled to claim on a settlement with his son, or his heirs and representatives, anything more than he actually paid in discharge of them, whether he sold the property of his son for the purpose of settling them or not. If, therefore, appellant paid the balance due the State for the land in Confederate money or State warrants, he was only entitled, at most, to charge his son with the value in money of such payments at the time they were made, and interest thereon until paid. In offset, however, of the amount thus advanced by appellant, he was liable to account to appellees for the rent or use and occupation of the land from the time he went into possession of it, and for the waste, if any, wrongfully committed by him while in possession of it; and to entitle appellees to specific performance, they must, when the account is properly taken, promptly pay, as ordered by the court, the amount, if any, found to be due appellant.

The judgment is reversed and the cause remanded, to be proceeded with in the court below in accordance with the views expressed in this opinion.

REVERSED AND REMANDED.