DAVIS et al. v. WYNNE. (No. 8537.)

(Court of Civil Appeals of Texas. Ft. Worth. June 24, 1916. On Motion for Rehearing, Dec. 2, 1916.)

1. EVIDENCE ⊜=448—PAROL EVIDENCE—PRELIMINARY NEGOTIATIONS.

In the absence of ambiguity in a written contract, and of fraud, accident, or mistake, evidence to establish preliminary negotiations for the contract, or to show an intention of the parties thereto at variance with its terms, is inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. ⊜= 448.]

2. PATENTS ⊜=192—RIGHTS OF ASSIGNEES—JOINT ASSIGNEES—MANUFACTURE AND SALE.

Each of several assignees to whom an interest in a patent right is assigned has a right to manufacture and sell the patented article, no matter how small his interest may be.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 269; Dec. Dig. ⊜=192.]

3. CONTRACTS ⊜=321(1)—CONTRACT TO ORGANIZE CORPORATION—BREACH—REMEDIES.

The fraudulent breach by defendant of a contract to organize a corporation and convey a patent to it does not authorize the subscribers to the stock to recover on preliminary and tentative agreements for the transfer of an interest in the patent to them which were merged in the subsequent contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1508; Dec. Dig. ⊜=321(1).]

4. SPECIFIC PERFORMANCE ⊜=31—CONTRACTS ENFORCEABLE—DEFINITENESS—CONTRACT TO INCORPORATE.

A contract to form a corporation cannot be specifically enforced, where there is no showing of an agreement upon the preliminary steps necessary to its formation, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1122, such as the names and number of persons who would be directors for the first year, the place or places where the business would be transacted, the term for which it should exist, etc.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 86–88; Dec. Dig. ⊜= 31.]

**5. CONTRACTS** ⬦75(2) — CONSIDERATION— CONSIDERATION FOR OTHER PROMISE.

Where the parties had made an original contract, whereby, in consideration of the subscription of plaintiffs to stock in a corporation to be organized to acquire the patent rights of defendant, the latter agreed to assign his rights to the corporation when it should be formed, the subscriptions could not be also the consideration for a subsequent promise by defendant to assign to each of the other parties an interest in the patent equivalent to the interest he would have had in the corporation.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 280–285; Dec. Dig. ⬦75(2).]

**6. CONTRACTS** ⬦65(3) — CONSIDERATION — "NOVATION."

Nor could the rights of the plaintiffs under the former contract be a consideration for the latter, where there was no agreement to surrender those rights, but the plaintiffs were insisting on the performance of both contracts, since a novation cannot arise unless there is a previous valid obligation, an agreement of all the parties to the new contract, the extinguishment of the old contract, and a valid new contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 292, 293; Dec. Dig. ⬦65(3).]

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Suit by W. D. Davis against W. P. Wynne for specific performance, in which R. E. Gatewood and others intervened and asked for the same relief as the original plaintiff. Judgment for the defendant, and plaintiff and interveners appeal. Affirmed, and motion for rehearing overruled.

Baskin, Dodge & Eastus, of Ft. Worth, and S. C. Padelford, of Cleburne, for appellants. Ike A. Wynn, of Ft. Worth, for appellee.

DUNKLIN, J. W. D. Davis instituted this suit against W. P. Wynne for specific performance of two alleged contracts to convey to him an undivided one-tenth interest in and to a certain patent right covering an invention originated and owned by the defendant, which consisted of an attachment for converting motor-propelled vehicles into tractors. As a basis for his prayer for a temporary writ of injunction pending final trial on the merits of the case, it was alleged that the defendant was proposing to assign the patent right to other persons in hostility to plaintiff's rights, and thereby to defeat the beneficial results of any judgment that plaintiff might finally procure in the case. R. E. Gatewood, J. H. Harris, and Ben Van Tuyl all intervened in the suit, each of whom alleged like contracts on the part of the defendant to convey to him an undivided interest in the patent right. The intervener Gatewood filed a separate plea of intervention, containing allegations relative to the contracts made by the defendant, substantially to the same legal effect as the ones alleged by the plaintiff. He also adopted the pleading of the plaintiff in his own behalf, and the plaintiff in turn furthermore adopted his pleadings also. Interveners Harris and Van Tuyl adopted the pleadings of both the plaintiff and Gatewood. The application for the temporary writ of injunction was heard by the trial judge, and was refused without hearing any evidence in support of the allegations, but solely upon the ground of the insufficiency of the pleadings of plaintiff and interveners to show a cause of action for specific performance, and from that order the plaintiff and intervener Gatewood have appealed.

The first contract alleged by the plaintiff and sought to be specifically enforced was substantially as follows: An agreement by and between the plaintiff and the defendant for the formation of a private corporation to be known as the Automatic Tractor Company, with a capital stock of $10,000, divided into 1,000 shares of the par value of $10 each, for the purpose of exploiting the patent and the manufacture and sale of the attachments; 550 shares of said capital stock to go to and be taken by the defendant in consideration of the transfer to the corporation of the patent right, and 450 shares of the capital stock to be paid for in money by subscribers therefor, 1000 shares of the capital stock to be subscribed by the plaintiff, and the remainder of said capital stock to be subscribed and paid for by other persons. The defendant agreed to procure other subscribers for the remainder of the capital stock and to procure a legal charter for the company. According to allegations in plaintiff's petition, after said agreement was entered into and in pursuance thereof, he signed a subscription contract for $1,000 worth of the capital stock of said proposed corporation and paid to Wynne thereon $150 in cash and agreed to pay to him $150 when the company was fully organized and the remaining $700 within 30 days thereafter. According to further allegations in the petition, the defendant thereafter failed and refused to procure a charter for said company in accordance with his agreement, in consequence of which the patent right could not be transferred to the proposed corporation, and that thereupon another agreement was entered into by and between the plaintiff and the defendant, by the terms of which the defendant agreed to transfer to the plaintiff an undivided one-tenth interest in the patent right itself.

The interveners Gatewood, Harris, and Van Tuyl each pleaded two contracts between him and the defendant substantially in the same terms as the two contracts pleaded by the plaintiff, except that Gatewood agreed to and did subscribe for $500 worth of capital stock, or 1/20 of the whole, and the intervener Harris agreed to and did subscribe for 1/40 of the capital stock or $250 worth, and Van Tuyl subscribed for $200 worth of capital stock or 1/50 of the whole; each of said interveners paying in

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

cash to the defendant 15 per cent. of the amount so subscribed, and agreed to pay 15 per cent. more when the charter should be obtained, and the remaining 70 per cent. of his subscription within 30 days after the issuance of the charter, and according to the second contract with each of those interveners the defendant agreed to transfer to him a corresponding interest in the patent right itself. The defendant addressed a general demurrer and several special exceptions to the petitions of plaintiff and interveners.

The pleadings of plaintiff and interveners abound with allegations of conversations and negotiations between them, respectively, and the defendant occurring prior to and culminating in the execution of the subscription contracts for capital stock in the proposed corporation, and the agreement by defendant to secure the balance of stock subscriptions and procure a charter for the corporation. The purport of those allegations was that it was intended and understood by and between such subscribers of stock that the contracts so made would have the legal effect of vesting in each subscriber for stock an undivided interest in the patent right itself, and the prayer for the specific enforcement of those contracts was predicated upon that theory.

[1] In the absence of some ambiguity in the first alleged contracts, and in the absence of fraud, accident, or mistake causing the execution of the subscriptions for stock, it is too well settled to require the citation of authorities that proof would not be admissible to establish such preliminary negotiations, or to show an intention of the parties thereto at variance with the terms of the contracts resulting therefrom; and special exceptions were addressed to those allegations substantially upon that ground.

[2] As noted already, according to the allegations of the complainants, defendant agreed to transfer the patent right to the proposed corporation as soon as the same should be chartered. If this had been done, clearly the entire and exclusive right to manufacture and sell the attachments for vehicles covered by the letters patent would have been vested in the corporation. But if, instead of organizing the corporation, an interest in the patent right had been transferred to each of said subscribers, then each of them by virtue of that interest, however small, would have been vested with the right to manufacture and sell such attachments to the same extent as if he had owned the entire patent right. Blackledge v. Weir & Craig Mfg. Co., 108 Fed. 71, 47 C. C. A. 212; Lalance & G. Mfg. Co. v. National Enam. & Stamping Co. (C. C.) 108 Fed. 77; and authorities there cited.

[3] The pleadings contained allegations of fraudulent breach by defendant of the contracts to organize the corporation, for the purpose of disposing of the patent right to others upon terms more favorable to defendant; but such allegations were wholly insufficient to set aside such contracts and substitute therefor prior alleged preliminary and tentative agreements to transfer to such subscribers interests in the patent right itself, which according to the pleadings were merged into the contracts to form the corporation to take over the entire interest in the patent right, coupled with the written subscriptions by complainants for capital stock in such proposed corporation. Nor did the complainants seek so to do, but, on the contrary, sought a specific enforcement of the contract last mentioned.

[4] Their pleadings fail to contain allegations of an agreement of the parties upon several preliminary steps necessary to the formation of the proposed corporation, such as the names and number of persons who would be directors of the corporation for the first year of its existence, the place or places where its business would be transacted, the term for which the corporation should exist, etc., and the absence of such allegations would of itself preclude a specific enforcement of the alleged contract, as insisted, in effect, by one of defendant's special exceptions to the pleadings. Article 1122, Vernon's Sayles' Texas Civil Statutes; Rudiger v. Coleman, 199 N. Y. 342, 92 N. E. 665; Loewenberg v. De Voigne, 145 Mo. App. 710, 123 S. W. 99. Furthermore, by articles 1126 and 1127, Vernon's Sayles' Texas Civil Statutes, it is provided that no charter of a private corporation shall be filed until "the stockholders of any such company shall furnish satisfactory evidence to the Secretary of State that the full amount of the authorized capital stock has in good faith been subscribed, and fifty per cent. thereof paid in cash, or its equivalent in other property or labor done, the product of which shall be to the company of the actual value at which it was taken, or property actually received."

As noted already, complainants alleged that the parties agreed to the capitalization of the proposed corporation at $10,000, of which amount defendant was to receive $5,-500 worth of the capital stock in consideration of a transfer by him to the company of the letters patent; but there is no allegation in any of their pleadings of the value of such patent right. On the contrary, it is specifically alleged that the value of the patent right is unknown to them. The absence of such a showing, coupled with the fact that 85 per cent. of the subscriptions by complainants was not due until after the issuance of the charter, is a further barrier to relief by specific enforcement of the contract to form the corporation.

The case of Jones v. Jones, 49 Tex. 683, was a suit for specific performance of a contract to convey land, and in disposing of it our Supreme Court used the following language:

"Neither the petition nor amended petitions of the appellees (the plaintiffs in the court be-

low) present in clear and distinct terms the contract sought to be enforced, as is required in an action of this kind; neither the aggregate amount to be paid for the land, nor time at which the different installments were payable, is stated; and the averments of performance, or of the facts relied upon to excuse literal performance of the contract on the part of the alleged purchaser, are certainly but vaguely and indefinitely stated—if, indeed, the averments of the petition and amended petition in these particulars are not repugnant and contradictory. It is a fundamental rule, in actions of this character, that the consideration for the agreement, the time and manner of its performance, and in fact all of its essential terms and stipulations, must be clearly and definitely alleged as well as proven, to warrant the court in granting the relief here sought."

To the same effect are Ward v. Stuart, 62 Tex. 333; Guadalupe Co. v. Johnston, 1 Tex. Civ. App. 713, 20 S. W. 833, and authorities there cited.

[5] In the present suit, as above shown, each of the complainants rely on and seek specific performance of two separate and distinct contracts; the first to form a corporation which would take over the entire patent right and issue to them capital stock in the respective amounts subscribed; the second contract being the agreement of defendant to forego the formation of the corporation and to convey to each complainant an interest in the patent right itself.

One of the special exceptions addressed to the latter alleged contract was that it was without any consideration to support it, and therefore was not enforceable. We are of the opinion that this exception is meritorious. It is expressly alleged in the pleadings that the consideration for the second contract was the same as the consideration for the first contract, viz., the subscription for capital stock in the proposed corporation, a payment in cash of 15 per cent. of the amount so subscribed, an agreement to pay 15 per cent. of the balance when the charter was obtained, and an agreement to pay the balance of 70 per cent. within 30 days thereafter. The consideration so alleged could not support both contracts at one and the same time with both in full force and effect. The second contract was not within the contemplation of the parties when the first contract was made, and hence was no part of the first contract, but was subsequent to and entirely different in legal effect from it, and in square conflict with it, and therefore it cannot be said that the consideration for the first also supported the second.

[6] Nor do the pleadings show any agreement that the first contract should be canceled and that the cancellation of the same should be a consideration for the second; in other words, the pleadings fail to allege a novation of contracts, but, on the contrary, preclude even an inference to that effect, for both contracts are alleged as a part of the cause of action asserted by each complainant and specific enforcement of both is expressly prayed for.

190 S.W.—33

In 29 Cyc. 1130, the following is said:

"In every novation there are four essential requisites: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new one. A novation is a new contractual relation. It is based upon a new contract by all the parties interested; and in some states it is specifically provided by statute that a novation shall be made by contract and be subject to the rules concerning contracts in general.

"In order that a contract of novation may be effected there must be a previous obligation to be released. This previous obligation, which is to be released, to be within the rule, must be a valid one."

Again, on page 1133, same volume:

"A novation, like other valid contracts, must be supported by a consideration, which in this case is a discharge of the original debt. If the agreement does not, or was not intended to, operate as a release of the original debt, it is not a novation. The discharge of the old debt must be contemporaneous with and result from the consummation of an arrangement with the new debtor."

See, also, Pierce Fordyce Oil Ass'n v. Woods, 180 S. W. 1181.

Again, in the absence of any showing that the value of the patent was as much as $5,500, in connection with the fact that 85 per cent. of the complainants' subscriptions for stock was not payable until after the procurement of the charter, there is no showing in the pleadings that the proposed charter for a corporation with an authorized capital stock of $10,000 could have been procured, and, in the absence of such a showing, it does not appear from the pleadings that the first contract to form such a corporation was a valid and enforceable agreement so as to furnish a sufficient basis for a novation.

For the reasons stated, we conclude, as did the trial judge, that the pleadings of complainants were insufficient to support a judgment for specific performance, and therefore it is unnecessary to determine the merits of other special exceptions addressed to those pleadings. And, if the pleadings were insufficient to support the recoveries sought, it follows as a matter of course that there was no error in refusing the application for the temporary writ of injunction prayed for. Beckham v. Munger Oil & Cotton Co., 185 S. W. 991.

The order denying the temporary writ is affirmed.

### On Motion for Rehearing.

In our original opinion we said that there was no allegation in any of the pleadings of the plaintiffs of the value of the patent right, which it was alleged defendants agreed to transfer to the proposed corporation in payment of 550 shares of the capital stock of the corporation contemplated. In their motion for rehearing appellants call our attention to an allegation, to the effect that the patent was worth at least $5,500, which defendants agreed to transfer to the proposed

corporation in payment of capital stock of the face value in the same amount.

In the voluminous pleadings, we overlooked that allegation and now here correct the mistake made by us. It is true, however, as stated in our original opinion, that the pleadings of the complainants also contained specific allegations that the value of the patent right was unknown to them. Our original conclusion on the whole case that there was no error in refusing the application for a temporary writ of injunction was based upon other reasons shown in our original opinion; which were sufficient of themselves to support the conclusion reached, as will appear from the opinion.

With this modification of our original opinion, the appellants' motion for rehearing is overruled.